**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KINGWAY SUPERMARKETS INC., d/b/a KINGWAY SUPERMARKET, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-06-3822 |
| UNITED STATES OF AMERICA, | § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Kingway Supermarket, Inc. filed this lawsuit on December 4, 2006 to challenge a decision by the Food and Nutrition Service ("FNS") of the U.S. Department of Agriculture. The decision permanently disqualified Kingway from participating in the food stamp program based on a finding that it had illegally trafficked in food stamp benefits through the use of the Texas Electronic Benefits Transfer ("EBT") system.

The United States moved for summary judgment. (Docket Entry No. 11). Kingway has responded, (Docket Entry No. 14), and the United States has replied, (Docket Entry No. 16). Based on the pleadings, the motion, response and reply, the materials submitted, and the applicable law, this court grants the government's summary judgment motion and, by separate order, enters final judgment. The reasons for this ruling are explained below.

**I.      Background**

In Texas, food stamp recipients obtain their benefits through an EBT card called a

"Lone Star Card." A recipient uses a Lone Star Card to pay for eligible food purchases at an authorized retail food store by inserting the card into a point-of-sale device and entering a personal identification number. The retailer then enters the amount of eligible food purchased and transmits the information to a central database. If the EBT system authorizes the purchase, the purchase amount is debited from the recipient's account and credited to the retailer. (Docket Entry No. 11 at 1-2 n.1).

Kingway is a small convenience store located in an urban commercial and residential area. Kingway is owned by Wan and Yun Ahn and Joshua and Soon Park. (Docket Entry No. 11, Ex. C at 1). The store has one cash register and one EBT device. (*Id.*). Kingway applied to participate in the food stamp program on March 15, 2004 and was authorized to participate on April 1, 2004. (*Id.*, Ex. A).

A FNS computer program known as the ALERT Watch List program identified Kingway as a target for investigation based on a suspicious pattern of transaction activity. The ALERT Watch List program identifies patterns of multiple withdrawals from the same food stamp recipient accounts within short periods. (*Id.*, Ex. B). After the ALERT system identified Kingway as "ripe for further investigation," the FNS analyzed Kingway's transaction history for October and November 2005 and determined that "the extreme numbers of transactions conducted by single households in such short intervals in a store with only a single cash register" showed that Kingway was engaged in food-stamp trafficking. (Docket Entry No. 16 at 3). For example, on November 3, 2005, one recipient made seven purchases in less than two hours. On November 4, 2005, the same recipient

2

made eleven purchases in six hours. Such patterns of activity were common in the period analyzed by the FNS. (Docket Entry No. 11, Ex. B). On March 28, 2006, the FNS notified Kingway that it was disqualified from participation in the food stamp program. (*Id.*, Ex. D). Kingway exhausted its administrative remedies and filed this suit.

In support of its summary judgment motion, the United States submitted the following: a copy of Kingway's application for the food stamp program; a list of food stamp transactions at Kingway from October and November 2005; a copy of the FNS survey of the Kingway store's layout, food stock, and other characteristics; a copy of the FNS's predetermination analysis of Kingway's food stamp transaction history; a copy of the letter notifying Kingway that it was permanently disqualified; and a declaration by Don Willis, the Officer-In-Charge of the FNS Houston Field Office, stating that the exhibits submitted by the United States are accurate. (Docket Entry No. 11, Exs. A–F).

## II. The Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the burden of proof lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's

claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports the essential element or claim. *Celotex*, 477 U.S. at 330. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. Exxon Mobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the pleading allegations. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. "Rule 56

mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

    **B.**    **The Food Stamp Act**

A district court must conduct a *de novo* review of administrative actions that determine eligibility to participate in the food stamp program. 7 U.S.C.A. § 2023(a); *Ramirez v. §. of Agric.*, 712 F.2d 150, 151 (5th Cir. 1983); *Khan v. United States*, Civil Action No. H-05-0947, 2006 WL 3147331, at *1 (S.D. Tex. Oct. 31, 2006); *Abdelkhalik v. United States*, No. 94 C 5809, 1996 WL 41234, at *2 (N.D. Ill. Jan. 30, 1996). The plaintiff has the burden of showing by a preponderance of the evidence that alleged violations of the Food Stamp Act and its regulations did not occur. *Khan*, 2006 WL 3147331, at *1; *Abdelkhalik*, 1996 WL 41234, at *2. The court should set aside the FNS's determination only if it is "arbitrary and capricious." *Khan*, 2006 WL 3147331, at *1; *Abdelkhalik*, 1996 WL 41234, at *2. A decision is arbitrary and capricious if it is "unwarranted in law" or "without justification in fact." *Khan*, 2006 WL 3147331, at *1; *Abdelkhalik*, 1996 WL 41234, at *2.

A firm may be disqualified from the food stamp program for violating food stamp regulations. 7 U.S.C.A. § 2021(a); 7 C.F.R. § 278.6(a); *Khan*, 2006 WL 3147331, at *2; *Abdelkhalik*, 1996 WL 41234, at *4. "Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site

investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system, or the disqualification of a firm from the Special Supplemental Nutrition Program for Women, Infants and Children (WIC)." 7 CFR § 278.6(a). Under the food stamp regulations, the FNS "shall . . . disqualify a firm permanently if" the firm has engaged in the trafficking of food stamps. 7 C.F.R. § 278.6(a); *see also Khan*, 2006 WL 3147331, at *2; *Abdelkhalik*, 1996 WL 41234, at *4. "Trafficking" is defined as "the buying or selling of coupons, ATP cards or other benefit instruments for cash or consideration other than eligible food." 7 C.F.R. § 271.2. The regulations do not require that a store owner "receive a warning, intend to violate the regulations, or benefit from the trafficking." *Goldstein v. United States*, 9 F.3d 521, 523–24 (6th Cir. 1993); *accord Traficanti v. United States*, 227 F.3d 170, 174–75 (4th Cir. 2000); *Kim v. United States*, 121 F.3d 1269, 1273–74 (9th Cir. 1997); *Khan*, 2006 WL 3147331, at *2; *Abdelkhalik*, 1996 WL 41234, at *4. "FNS may impose a civil money penalty in lieu of a permanent disqualification for trafficking . . . if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program." 7 C.F.R. § 278.6(I).

### III. Analysis

Kingway contends that the United States has failed to submit admissible evidence demonstrating food stamp trafficking. Kingway asserts that the evidence consisting of the ALERT computer program analysis of transaction data is not admissible. (Docket Entry No. 14 at 2).

The FNS did not rely solely on the ALERT program analysis of transaction data in determining that Kingway was trafficking in food stamps. The ALERT program was used to identify Kingway as "ripe for further investigation." (Docket Entry No. 16 at 1). The food stamp regulations explicitly state that a firm may be disqualified on the basis of "evidence obtained through a transaction report under an electronic benefit transfer system." 7 C.F.R. § 278.6(a). "It may well be easier for a plaintiff to rebut the inference of EBT data than evidence of 'red-handed' violations, but this does not mean that the FNS cannot rely on it where . . . the Plaintiff has failed to rebut or raise material issues of fact as to the logical inferences from the data." *Kahin v. United States*, 101 F. Supp. 2d 1299, 1304 (S.D. Cal. 2000).

Courts have upheld a store's disqualification from the food stamp program based on an analysis of electronic benefit transfer system data, similar to the analysis used in the present case. *See Idias v. United States*, 359 F.3d 695, 698 (4th Cir. 2004) (upholding disqualification when the United States "presented evidence of a pattern of irregular and suspicious activity, including that (1) on several occasions, total food stamp debits exceeded the store's documented total sales; (2) total food stamp debits systematically exceeded the sales categorized as food stamp sales on the store's register tapes; and (3) large food stamp debits often occurred in quick succession, sometimes even using the same EBT card, despite the Supermarket's modest size."); *Saleh v. United States*, No. 02 C 8846, 2004 WL 549457, at *1–3 (N.D. Ill. March 19, 2004) (upholding disqualification because "[t]he high number of high-dollar value EBT transactions at [the store] was excessively high for such a small

store with few food stamp eligible items."); *Kahin*, 101 F. Supp. 2d at 1303 (upholding disqualification of a small store with limited stock when there was "rapid, repetitive transactions to the same customer indicated in the EBT data.").

The transaction data in the summary judgment record show "[m]ultiple withdrawals made from the same food stamp recipients' accounts within unusually short time frames." (Docket Entry No. 11, Ex. C at 2). One customer spent $45.58 at a large, full-line supermarket with a better quantity and variety of staple food stock than Kingway on the same day that the customer made sixteen purchases over a twelve-hour period at Kingway. (*Id.*, Ex. C. at 3). Kingway provided no explanation for this pattern. (*Id.*). The FNS Houston field office concluded that food stamp trafficking was occurring "[b]ased on the client's shopping patterns, [the Houston Field Office's] knowledge of legitimate food purchases, the Agency's EBT experience analyzing and evaluating transaction data and common sense." (*Id.*, Ex. C at 5).

Kingway objects to, and moves to strike, the government's exhibits, including the precharge analysis determination and the declaration of Don Willis. Kingway objects that the data is unauthenticated hearsay and not reliable, and that the opinions are conclusory and not adequately supported by admissible evidence.

Willis's declaration states that he has "been actively involved in [this case] since its inception." Both the letter notifying Kingway that the FNS was conducting an investigation and the letter notifying Kingway that it was disqualified from the food stamp program were signed by Willis. (Docket Entry No. 11, Exs. B, D, F). Willis is personally familiar with the

investigation of Kingway. Willis's declaration states: "I have reviewed the USDA's files and records pertaining to the above cause of action. I have read and reviewed the foregoing motions for summary judgment and accompanying memorandum in support thereof along with the attachments. The exhibits are accurate and represent what the motion and memorandum for summary judgment purport they represent. The facts in the motion and memorandum are true and accurate, to the best of my knowledge." (Docket Entry No. 11, Ex. F at 1). The declaration is a sufficient predicate to authenticate the records. *See Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 924 (7th Cir. 2002); *Martinez v. United States*, Nos. EP-04-CA-169DB, EP-01-CR-316-DB, 2007 WL 3311156, at *10 (W.D. Tex. Nov. 7, 2007).

The ALERT data was used to show a pattern of transactions, which was in turn used to identify the store as a candidate for closer examination. That examination was based on the store's own transaction history for a two-month period. The Food Stamp Act itself contemplates regulations providing "criteria for the finding of a violation and the supervision or disqualification of a retail food store . . . on the basis of evidence that may include facts established through onsite investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system." 7 U.S.C.A. § 2021.

As noted, the data at issue here is very similar to the data used in other cases upholding disqualification determinations. *See Kahin*, 101 F. Supp. 2d at 1303. Kingway's objections to the evidence are overruled. The data submitted is properly considered under Rule 703, Rule 801(d)(2), or Rule 803(6) of the Federal Rules of Evidence. The evidence

9

demonstrates the reliability of the information and methods the FNS used to gather and analyze the information and to reach the conclusion that Kingway was engaged in food stamp trafficking.  Kingway  has failed to raise disputed issues of fact material to determining whether it engaged in food stamp trafficking.  *See Kahin*, 101 F. Supp. 2d at 1303.  Kingway failed to submit evidence to the FNS demonstrating that it has established and implemented an effective compliance policy to prevent violations of the food stamp program.  Permanent disqualification is not arbitrary or capricious.  *See* 7 C.F.R. § 278.6(I).

The government's motion for summary judgment is granted.

SIGNED on February 19, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge